Mr. Lorenz. Thank you. May it please the court, counsel, my name is Lucas Lorenz, I represent the appellant Franklin Gale, who is seated at council table along with co-counsel Don Sisson. We're here because Denver wanted a trophy to hang on its wall. Because of his outspoken union involvement, Gale was that trophy. Now a trophy to hang on the wall, those are the words of no less than the then-Sheriff of Denver, who participated in the closed-door meetings with those who determined the fate of Gale's 25-year career with the Denver Sheriff Department. Gale's fate was sealed when he sat across the table from Denver in collective bargaining, when he voiced criticism of the administration, when he worked his way up to a prominent role in the Fraternal Order of Police Union, and when he spoke out on behalf of union members. Now the issue we're here about really starts with the magistrate judge's order below granting Denver's motion for leave to amend the scheduling order, to amend their answer to add the affirmative defense of race judicata. So, if this court finds that the magistrate judge was in error and that Gale's objection should have been sustained, then that can dispense with the rest of the issues. How could they have pled the affirmative defense until there was a final agency action? So I'm glad you asked that, Your Honor, and I think what we do is we go and we start with Rule of Civil Procedure 8, which for one thing lists race judicata as one of the affirmative defenses that has to be pled. But more importantly, Rule 8 says that affirmative defenses can be asserted alternatively or hypothetically. They can be, but do they have to be? Because that's really what you're saying here, is that he was required to assert a hypothetical defense. Yes, that is right. I didn't see that you cited any authority to that effect. I think... That you can assert a hypothetical defense is not the same as saying that you must assert it. I think it's right there in Rule 8, Your Honor, because by saying race judicata is one of the defenses that has to be asserted in the answer and looking at the whole purpose of the Rules of Civil Procedure and asserting affirmative defenses and putting the court and the parties on notice of these potential defenses, the rule requires that you include that with your answer. If you have an affirmative defense that you have a good faith basis to assert, then... Why would you have a good faith basis to assert claim preclusion? Because there has been no final judgment. Because... In other words, all what you're arguing is that something may happen in the future and because it might happen in the future, the defendant is obligated to include that as an alternative defense in its answer. But the Colorado Supreme Court might never issue a final judgment or it might do it after this case has long since been over. So I'm not sure that even an alternative pleading would satisfy Rule 11. Well, I think it absolutely would because Rule 8 explicitly says you can assert affirmative defenses hypothetically. So based on something that might happen in the future? Sure. Absolutely. Well, you would have... You could have then moved to dismiss and you would have had a slam dunk motion to dismiss on the affirmative defense because there was no final judgment, right? I'm sorry. If he had pled, raised judicata, or raised the affirmative defense, you could have or would have moved to dismiss the affirmative defense and you would have won. Well, I don't think so because at the pleading stage, the question is not can the defendant prove all of those affirmative defenses at that stage? The question is can they assert those within the boundaries of Rule 11 and Rule 8? So I don't think we could have because it doesn't take a great leap to think that, okay, we've got this state court case. At some point, there's going to be a resolution of that case. Whether it's in Gail's favor, whether it's in Denver's favor, it doesn't matter for purposes of raised judicata. What matters is there's going to be a final judgment and certainly within the boundaries of Rule 11 and Rule 8, they could say, okay, because this has been their sole reason that they've asserted for not including it in the answer is, well, we had to wait for the state court judgment. Well, that's contradicted by Rule 8 and because they didn't have to wait, because Rule 8 says you can assert affirmative defenses hypothetically and in the alternative, then they don't get over that hump of the Rule 16 standard because that's really what we're talking about is the Rule 16 standard because the context was a motion to amend the scheduling order, which requires good cause, and that standard is was the party diligent? Did they exercise diligent efforts in bringing this before the court as soon as possible? And in this case, they didn't because even if we assume, like let's assume for the sake of argument that they weren't required to assert the affirmative defense in their answer, but they were allowed to, then certainly diligence would say, okay, you need to bring that up as soon as possible, which means bringing it up when you're aware of it, even if you're not necessarily required to. And that they did not do. And that's why under Rule 16, they should not have been allowed to amend the scheduling order, which would have cut this whole thing off at the pass. But now, if we do reach the elements of claim preclusion, the two elements that are most important today, because as noted in the briefs, there's been a final decision by the Colorado Supreme Court. So just to be clear, so your argument about the absence of a final judgment, that issue is moot. Yeah. You know, we still think that with respect to the district court judge, she got it wrong at that time. But as we sit here today, that's moot. So we ought not worry ourselves about that. Unless you felt the need to correct the district court judge. But yeah, it's not a ground for reversal at this point. Thank you. Now, the retaliation issue was raised before the Career Services Board, wasn't it? I mean, just to kind of clear away the debris, the essential elements of your 1983 claim were argued before the Career Services Board. Namely that he was retaliated for exercising his union organizing activities. With all due respect, Your Honor, I would disagree with that. Because there's more to a 1983 claim than just saying, I was retaliated against. There's the elements of official duties, public concern, the weighing of the employer's interest versus the employee's constitutional rights to speech. Were there any other facts that were necessary to be developed at that point? Absolutely. Absolutely. Because as the record bears out, in the district court in this case, there was much more discovery that Mr. Gale was able to engage in. And there were key facts that came out in that discovery that he couldn't get in the... Was there any legal impediment to your filing the 1983 claim in the Denver District Court appeal under 106-A4? To my knowledge, there was no impediment in the sense of we would have been proclaiming... Your position is you could have pled it there, but that under Colorado case law, you weren't required to plead it there, that you had a choice of working it through the 106-A4 process or saving it for the U.S. District Court. That's exactly right. Or you could have filed another state court action, presumably. Yes, exactly. That's exactly right. And... All potential claims need to be pled with the 106-A4 appeal. If I could just have one second. Well, the Colorado Supreme Court has already resolved that in Sondheim and Sterno. They've already said the 106 action and the 1983 action can exist separate and independent of each other. So all we have to do is follow Sondheim and Sterno. The heavy lifting's already been done there. That is the state of the law in Colorado. What were the facts in Sondheim, though? They aren't the same here as we have here, correct? They're not. There are... Oh, I'm sorry. Go ahead. I'm sorry. There are distinguishing facts between them, but nothing materially distinguishing. Why not? The principle laid down by the Sondheim court applies equally whether there was a 106 action filed or whether there wasn't. Because I know in Sondheim, that plaintiff did not file a 106 action. But the principle laid down by the Sondheim court, whether there's a 106 action or not, the principle applies the same. The concern of the 1983 or the 106 state court action overstepping and putting barriers in front of the 1983 action. Well, the concern was the statute of limitations being different, right? That was the genesis of the principle set forth. In Sondheim. Yes. Yeah. Do you really have that concern when they do actually file and seek judicial review in the state court? Do you have that concern about the statute of limitations? You certainly can. And they've already raised the claim with the board. They've asserted it and they could have included it in the state district court proceeding that they actually did file in this case. Yes. But then if you say... And that's the distinction I'm trying to get to. Sure. And if you say, well, you could have asserted it in the state district court action, but we're going to preclude the federal action because you didn't, that is stepping into the same territory that the Sondheim and Sternholm courts were so concerned about. And it would violate the principle set forth there. Because whether there's a 106 action or not, if you're holding the plaintiff to the requirements of the 106 action, the filing deadline, et cetera, et cetera, you're still putting up those procedural barriers because an employee can be terminated and there are plenty of And some of those are shorter, some are longer, some are shorter. But when the 106 action ends up coming due, if you will, is not going to always line up with the deadline for the statute of limitations for the... Right. So isn't your choice not... I guess, would your choice be, according to the district court here, not file the 106 action and preserve your 1983? Well... I mean, isn't that what the district court said here? If that's what the district... That's how she distinguished Sondheim. Sure, but what Sondheim and Sternholm do is they make it so that a plaintiff doesn't have to have that Hobson's choice. They say, Sondheim and Sternholm, the Colorado Supreme Court said, these things can exist independently. So we don't need to worry about these issues of, you know, drawing fine lines or will it work in this case? Will it work not in that case? And potentially implicating all these issues. We don't need to do that. And if it pleases the court, I'd like to save my remaining two and a half minutes. Before you... Go ahead. Sure. Well, I'm hoping that our presiding judge may show some generosity to you with additional time because I'm about to steal your rebuttal time. In... I'll give you some rebuttal. Thank you. In Sondheim or Sternholm, was there an appeal to state court under Rule 106A4? In Sondheim... Or Sternholm. Right. In Sondheim, to my recollection, there was not. And in Sternholm, there certainly wasn't because Rule 106A4 didn't even apply. It was an APA case, right? Right. There was an administrative hearing and then that went straight to the court of appeals. So your argument in applying Sondheim and Sternholm is basically the underlying principle. You're not arguing that those are governing because they obviously involve materially different facts. But you're saying, essentially, the dicta or the principle should be applied logically here, correct? Well, I am saying they govern here because the breadth of the holding in Sondheim and Sternholm, this case falls under the umbrella of that holding. Okay. But we have a contrary holding in bowling, right? That's correct. But bowling happened before Sondheim and Sternholm. I understand that. Should we certify this issue on identity of claims to the Colorado Supreme Court? You know, I think it's not absolutely necessary because Sondheim and Sternholm, to my reading, make it clear what the outcome should be. But if the court has any reservations about, you know, should there be kind of an exception, if you will, in a case where the deadlines maybe line up better? Or is there, does it matter when there actually is a 106 filed? Then if there is that, if there is some muddy water there, then I think it would be proper for that to be answered by the Colorado court because we're talking about Colorado law that applies here. Thank you. And just to follow up on that, do you face any statute of limitations exposure in this case? In other words, for the 1983 claim, is there any statute of limitations risk for you? Do you mean if we were to, if the case was dismissed without prejudice and we refiled? Right. I'm sorry, I'm not following. I'm not asking it clearly, I suppose. But when did you file your 1983 claim? The 1983 claim was filed before or after the 106-A4? It was a little bit more than a month after the 106. Okay. And then I'll give you some rebuttals. Before you sit down, can you articulate what you see as the district court's flaws in her reliance on Sternholm? I think the district court erred in distinguishing Sternholm because, for one thing, the matter doesn't rise and fall solely on Sternholm. There's Sundheim. But with Sternholm, the issue before the court there was a claim preclusion issue, to my recollection, or at least the preclusive effect of the state court action. And what the court did in Sternholm has direct application here. The holding there, they said the 106 and the 1983 can exist independent of each other. I'm paraphrasing. That is the dictate of Colorado law. And that decides the issue here and should have decided the issue before the federal district court. But they wouldn't have even been in the same lawsuit. The APA issue in Sternholm had to be brought before the Colorado Court of Appeals, and the 1983 claim would be in district court, state district court. So there couldn't have been contemporaneous prosecution of those two claims in the same forum, which lists the same case in Sternholm. Yeah, to my knowledge, the Court of Appeals wouldn't have jurisdiction over a newly asserted 1983 claim, but that doesn't change the fact that the issue there was this intersection of 1983 and 106 and the preclusive effect of one and the other. And the fact that somebody chooses to file a 106, if you say, OK, now, since you chose to file a 106, now you're going to be subject to a different rule that puts up the kind of procedural barrier to a 1983 action that Sondheim and then later Sternholm forbade. All right. Thank you, counsel. I think we understand that. Thank you, Your Honors. May it please the Court, good morning. My name is Charles Mitchell. I'm the Assistant City Attorney with the City, County of Denver. My co-counsel, Jessica Allen, is with me at the table, and together we represent the City and County of Denver in this appeal, the appellees in this appeal. I'm here today to ask you to affirm the district court's decision properly applying the doctrine of res judicata to Mr. Gale's claims and finding that res judicata does indeed imply and bars all claims that were asserted in the federal court. Now, this is a fairly straightforward application of res judicata, and I'm certainly not going to lecture you on that, but just it's important to state that this is about whether a final judgment on the merits of an action precludes the parties from relitigating claims that were or could have been brought in the prior action in Gale 1. And that's the important language, could have been brought. Obviously, the 1983 claims were not brought. We also have, though, Colorado cases that identify the test as that were or should have been brought, and the difference between could and should may have a material difference in the outcome here, right? Perhaps, but as this court was saying before, the issue that Mr. Gale is asserting is certainly there's a concession that they could have been brought. The issue is whether or not they should have been, and that gets into the hypotheticals that were asserted by Mr. Gale in his argument, as well as the body of case law. When you're looking to preclude a particular judgment, you look to the state court's law for where that judgment arose, and obviously, this is Colorado law. And under Colorado law, I think the overwhelming case law is clear that it's claims that were or could have been brought, and specifically with regard to this case, under Rule 106, state court review of an administrative action, the legacy of Powers and Norby and all of the Colorado case law that specifically deals with res judicata is absolutely clear that as a matter of public policy, you're certainly not required to bring a 106 action, but if you do bring a 106 action, you are required to bring all other joinder of claims, constitutional statutory claims, in the same action. But how do you fend off Sunholm? Because Sunholm seems a pretty clear enunciation of the idea that if you're prosecuting a 1983 claim and the two-year period of limitations applies, as opposed to a 30-day period for 106A4 appeals, that you should have two years, that you shouldn't be held to a 30-day test for the SOL for 1983 claims. So if we disagree that the test is could and we say it's should, do you lose under Sunholm? I would address it in the same way the district court did, that the facts of Sunholm are limited to the procedural facts that the plaintiff in Sunholm did not raise a 106 action, chose not to, didn't raise it, and then separately, two years later, attempted to raise the 1983 claim. And the issue in that case is really limited to simply whether or not it was timely or there was jurisdiction. Now, the district court found that because it was a quasi-judicial administrative action and because it was not raised in that first 30 days, it was untimely. But the court of appeals, the holding, is strictly limited to the finding that if you do not bring a 106 action, you're not restricted to that 30-day limit on the otherwise two-year statute of limitations for the 1983 claim. So you think if in Sondheim, he'd filed a 106 action, didn't include the 1983 claim, and then later tried to amend his 106 after the 30-day statute of limitations, do you think the sometime would have been resolved differently? Just so I understand your hypothetical, if they had brought a 106, and then the 30-day statute of limitations, then missed the statute of limitations, but we're still within the two-year. Right. But after the 30 days, after filing the 106, they seek to amend to add a 1983 claim. I believe that the court would allow it as long as they establish good cause and a basis for it, and there's no prejudice to the other party. The language in Sondheim is a little bit broader than that, though. I mean, I understand why you're trying to limit it to the facts, but I'm not sure they understood that they were doing that. And then when you get to the next case, Sternholm, they broadly talk about Sondheim. They don't, certainly don't make the distinction you're making here. Admittedly, that was under the Administrative Procedures Act, a different section. But then they even say that that section 106.7 is the counterpart to judicial review of local government action under 106A4. Right. That's not really true, is it? It's not a counterpart. I don't believe it is a counterpart. I believe that the discussion language in both of those cases, and as the District Court acknowledged, the discussion language is perhaps broad. And taken in isolation, it does appear at first blush to support at least a door opening to an independent action. However, I think that the facts are absolutely clear. There was no 106 in either one of these. The plaintiff in Sondheim did not bring a 106. The plaintiff in Sternholm couldn't. I mean, it was an appeal of a chiropractic license that had to be done under the APA, which goes straight to the Court of Appeals. And there's no opportunity to join a claim in the way that a 106 has under their specific language under 106. I guess that's my question. I feel like that statement that they make about the counterpart basically saying, you know, we're holding the same thing they did because these two are problematic for us interpreting the law now. And isn't a certification of this issue maybe appropriate because of some of that conflicting language? Well, I think you can... And because of bullying also. Nobody talks about bullying. And of course, that's the facts we have now. Bullying is as much on all fours as this case as it can be. And it's good law. It hasn't been reversed. It hasn't been amended or limited in any way by these Colorado State Court actions. Did anybody even cite bullying to the Colorado courts, though, in these cases? I don't have the impression they even knew about it. In Sondheim and Sunderland? Right. They did? They are cited. Because I don't see it cited in the opinion. I think what's important to look at is in the 20 plus years since Sondheim and Sternholm, I mean, these cases are more than 20 years old, I think, in 96 and 97. There hasn't been a single case, either in the state court or in the Court of Appeals, that even suggested that those cases stand for anything more than what the district court viewed them as, which was simply in cases where you chose not to bring a 106 or couldn't or prevented from bringing a 106, you certainly have an independent 1983 claim under the proper statute of limitations for 1983 as long as you bring it. There hasn't been anything going the other way either, though. That's the trouble. Well, that's true. We don't have either way. And then we've got bullying. And this court certainly could make new law in that regard. But I think that when you look at the cases, they are moored by their facts and that there is absolutely nothing in there that would suggest that they are overturning or interfering with the Colorado doctrine of res judicata under Powers and Norby and the way bullying had been applied. So certainly they acknowledge an independent 1983 action to the extent that you have not already hitched your horse to a 106 or those administrative review proceedings. But the public policy in the state of Colorado is absolutely clear. You don't have to bring a 106, but if you do, you must bring all constitutional and statutory claims together just out of efficiency and as a matter of public policy. And this case does not raise facts that would suggest that that needs to be revisited. The plaintiff in this case was well aware of the 1983 claims from the very beginning. I mean, the day after Mr. Gale was terminated, he contacted the press and started talking about union busting and how this was an affront to his union claims. So these claims were known from the day of the termination. So this is not a situation where there is some procedural error that prevented the plaintiff from asserting all claims that he was aware of and that under Colorado law should have been brought as soon as he chose to take the 106 action. Unless he understood these two Colorado cases to mean that he didn't have to, which might not be an unreasonable conclusion. You're saying he should have known and he should have known he had to go ahead and do that, or he should have filed no state action at all as they did in Sondheim. Yes, under Colorado's doctrine of race to the counter. I won't have any review because I want to make sure I preserve my 1983. He had many options. He certainly could have brought the 106 action and included the 1983 claim that he was aware of, was not hidden or undisclosed until a later date. He could have brought them both together. He could have brought the 106, reviewed his options and moved to amend in the 106. He could have foregone the 106 action and gone straight to federal court. He had many options, but the one thing under Colorado law... He filed in federal court before the completion of the board decision, so he had a pending U.S. District Court action and then his opportunity to appeal the agency action under 106 accrued. Could he have had a parallel claim here and a 106 in state court? I apologize. I'm not sure I understand the question. He filed here in 1983 before his 106A4 appeal ripened. Bring the 106 in federal court while the Administrative Act is in effect. 1983 here and then subsequently appeal under 106. He already had a pending case before he had an opportunity to do the 106A4 appeal. Could he do that? I would need to look at the case law, but based on your hypothetical, I would see no reason why he couldn't bring that as well and still preserve as long as he was compliant with rule 106 in terms of the deadlines there, pursue the review of the administrative action. The Colorado law does not give preclusive effect to administrative action by itself. It needs to be reviewed by a state court. So until that happened, until that happened and a final judgment in the state court action, the race-judicata issue would not arise and I would think that unless there is some procedural bar in Colorado law that prevents the switching of the order of those two things that it wouldn't change that, if that answers your question. I see I have a couple of minutes left. I do briefly want to address this issue of the magistrate's order allowing the amendment of pleadings. It's been suggested that this was something that was untimely or waived or sat on in any way. I mean, the sitting county of Denver absolutely asserted race-judicata at the first opportunity that it was a viable affirmative defense. The district court decision came down. The city notified Mr. Gale by letter almost immediately and moved to amend almost immediately. This also happened before any discovery had taken place other than these disclosures. There were no depositions that had taken place. There's no prejudice or bias or hardship on the timing of that disclosure. And in terms of the hypothetical of whether or not we should have asserted every possible affirmative defense before it was ripe, I just don't think Rule 8 supports that and it would require all parties to bring all possible affirmative defenses at the same time or risk losing them because at some point they do ripen. In a 106 action, I know the city does these routinely, some of those actions take three to four years to resolve in the city answer this complaint that we would have a final court judgment within a time frame to have asserted that in the answer. Can I ask you about the standard? Both of you, interestingly, state in your briefs a different standard. Mr. Gale says that it's abuse of discretion and you, I think, rely on 636B and Rule 72 and say that because it was a magistrate judge's order that was reviewable by the district judge that it would be subject to the clear error standard. And I'm kind of curious about that. On the face of it, it does seem like that, well, you would apply Rule 72 in Section 636B and apply clear error, but on the other hand, it is a little counterintuitive because the district judge in Colorado unilaterally decides to refer it to Judge Mix, a magistrate judge, that it should somehow dilute or make more rigorous the standard of review. I think that there's arguments for either one of the standards, but how do you avoid just the general abuse of discretion standard? The city's position is that, and I believe the case law supports it, is that if it's a non-dispositive decision, then it would be subject to the clear error standard. And in this case, the amendment of the pleading, which was allowed, in other words, this pleading was amended to include res judicata, was a non-dispositive ruling. No, I get all that, but if the district judge had just decided it on their own rather than refer it to a magistrate judge, it would have been abuse of discretion. That's true, and under either standard, I think that the good cause standard was met under Rule 16 and the need to amend under 15 was appropriate under either standard. I can't speak for what Chief Judge Krieger is doing in terms of her docket or her decision to refer that. I don't think at the end of the day it would affect the procedure that did happen in terms of the referral and then the review by the district court judge, which would be under this clear error standard because it's non-dispositive, but it is an interesting distinction. I don't know if that answers your question. I don't know if there is an answer. I think at the end of the day, certainly there was good cause to amend because there was new information in terms of the district court judgment. So under either standard, I think Rule 16's good cause standard was met and was done in a timely manner. I think the only prejudice to Mr. Gale was that he was then required to deal with the race judicata issue, but it was done at an appropriate time in the proceeding and there was no bias or hardship there. I think your time has expired. Thank you, Mr. Mitchell. We would ask that you affirm. Thank you, Your Honors, for your indulgence. I'll try to keep it brief, all the same. As to the issue of Sondheim, Norby, the general principle that was stated in Norby, Sondheim cited to Norby. Sondheim said, hey, this is the general principle, that generally we do have this policy of including all claims in the 106 action, but, and then the Sondheim court proceeded to say the analysis shifts when you've got a 1983, where it has to be a different analysis. And Sondheim, I mean, even putting Sternholm aside, Sondheim says you treat the 1983 and the 106 different, and both are still good law. And whether Sternholm was correct about, you know, what claims could be asserted or the facts articulated by the Sondheim, you have the Colorado Supreme Court twice articulating the law of Colorado, which is that the 106 and the 1983 can exist independent of each other. And it's Colorado law that applies here. Now, I know that, at least based on my research, I haven't found any case explicitly overruling bowling, but that being said, the underpinning of bowling was Norby. And this older articulation of the Colorado policy, but then you look at the more recent Colorado cases, like Sondheim, which cited to Norby and articulated that, and then narrowed it further. So the bowling court didn't have the benefit of Sondheim and Sternholm, obviously. So while bowling may have been correctly decided at the time under Norby, as the law stood at that time, we're now in a different landscape. And now the landscape is laid out by Sondheim and Sternholm. With respect to the amendment of the scheduling order under Rule 16, one of the main problems with the magistrate judge's order is that it depended on the assumption that Denver could not, in the magistrate judge's words, could not have asserted the affirmative defense earlier. And that's plainly incorrect and inconsistent with Rule 8, which is why the magistrate judge's, excuse me, Gail's objection to the magistrate judge's order should have been sustained under whatever standard of review, because the underpinning of that order is contrary to Rule 8. So unless there's any questions, again, thank you for the additional time, and we respectfully ask that you reverse the decision below. Thank you, counsel. We appreciate the arguments well presented. Your excuse in the case will be submitted, and the court will be in recess until 2 o'clock this afternoon.